UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| MARC T. WARREN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00116-JMS-MJD |
| | ) | |
| CORIZON INC., | ) | |
| DICK  BROWN, | ) | |
| SWARTZENGRUBBER Nurse, | ) | |
| CHAVEZ M.D., | ) | |
| | ) | |
| Defendants. | ) | |

**Entry Denying Motion for Summary Judgment, Warning Defendants' Counsel Regarding Future Legally Frivolous Arguments, and Directing Further Proceedings**

Plaintiff Marc Warren, who at all relevant times was incarcerated at the Wabash Valley Correctional Facility ("Wabash Valley"), brought this civil rights action pro se pursuant to 42 U.S.C. § 1983 against defendants Corizon, Inc., Dick Brown, Nurse Swartzengrubber, and Dr. Chavez.  Mr. Warren alleges that the defendants provided him, or were responsible for providing him, medication to which they knew he was allergic.  The defendants move for summary judgment on their affirmative defense that Mr. Warren failed to exhaust his administrative remedies regarding this claim before bringing this action as required by the Prison Litigation Reform Act ("PLRA").  For the reasons explained in this Entry, the defendants' motion for summary judgment is **denied**.  Filing No. 38.  Moreover, the defendants' counsel is warned that future legally frivolous arguments made in support of their motions for summary judgment are sanctionable under Rule 11 and 18 U.S.C. § 1927.

# I.
## Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

# II.
## Background

As stated, the defendants move for summary judgment on their affirmative defense that Mr. Warren's claims are barred under the exhaustion provision of the PLRA. *See* 42 U.S.C. § 1997e. That provision requires a prisoner to first exhaust his available administrative remedies before filing a lawsuit. The facts that follow are drawn from the evidence submitted by the parties, all of which are undisputed.

The Indiana Department of Correction ("IDOC") has an Offender Grievance Process ("OGP" or "administrative remedy process") through which inmates, including those at Wabash Valley, can grieve issues related to their conditions of confinement, such as the claims at issue here. The OGP in effect at all times relevant to this action consisted of three stages: the informal grievance stage, the filing of a formal grievance, and the filing of a grievance appeal. The OGP is complete, and all administrative remedies are fully exhausted, once the inmate has received a response to his grievance appeal.

The defendants submit the majority of their evidence via the declaration of Teresa Littlejohn, who at all relevant times was the Grievance Specialist at Wabash Valley. As such, she

was responsible for entering grievances and responses thereto into IDOC's grievance tracking system and is the custodian of grievance records at Wabash Valley. Ms. Littlejohn attached a copy of Mr. Warren's Grievance History Log to her declaration. The Grievance History Log states that, during his time at Wabash Valley, Mr. Warren filed one formal grievance (#94014), which was denied but not appealed. That grievance complained of allergic reactions to the "cheap medications" prescribed to him by his medical providers. Filing No. 39-3 at 3.

Mr. Warren submitted with his response brief a declaration sworn under penalty of perjury that sets forth his version of events. He attests that he placed the denial of his formal grievance—at the bottom of which he signed and checked a box stating that he disagreed with the resolution—"in the counselor's box in the P-Housing Unit on December 11, 2016." Filing No. 43 at 10. But, he says, he "never received a grievance appeal form back from the grievance specialist." *Id.* Mr. Warren further attests that the OGP "does not state in what manner I am to turn in a formal grievance appeal request; but the informal custom is to place these formal grievance appeal requests in the counselor's box in your housing unit [which is what I did]." *Id.* He submits a copy of the document he placed in his counselor's box with his declaration. *See id.* at 12.[1]

---

[1] The defendants assert in their reply brief that "[n]o such document is attached to Plaintiff's Response." Filing No. 44 at 2. But Mr. Warren attached two documents to his response brief, one of which is the document he described. *See* Filing No. 43 at 12. The defendants' confusion may stem from the fact that, at least in the Court's view, Mr. Warren is stating that he requests a grievance appeal form by submitting his formal grievance denial to his counselor with the box checked showing that he disagrees with the resolution, which in turn prompts the counselor to provide a grievance appeal form. In fact, Mr. Warren's position is supported by the defendants' own evidence. Ms. Littlejohn's affidavit states that should "mark the line on the Level 1 Finding . . . next to 'Disagree' if he wishes to proceed to an appeal." Filing No. 39-1 at 3.

**III.**
**Discussion**

**A.     Analysis**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e; s*ee Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter*, 534 U.S. at 532 (citation omitted).  Moreover, the "exhaustion requirement is strict. A prisoner must comply with the specific procedures and deadlines established by the prison's policy."  *King*, 781 F.3d at 893.

"At the same time, the [PLRA] requires exhaustion only of remedies that are 'available.'"  *Id.*  There are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016).  First . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Id.*  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it."  *Id.*  Third, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," such as when prison official "devise procedural systems (including the blind alleys and quagmires just discussed) in order to trip[] up all but the most skillful prisoners."  *Id.* at 1860 (citation and quotation marks omitted).

The exhaustion requirement "is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). This includes the burden of proving that the administrative remedy process was available. *See Thomas v. Reese*, 787 F.3d 845, 848 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."); *Kaba v. Stepp*, 458 F.3d 678, 686 (7th Cir. 2006) (holding that the defendants failed to meet "their burden of proving the availability of administrative remedies").

The entirety of the evidence relied upon by the defendants to demonstrate that Mr. Warren did not exhaust is their testimony from the Grievance Specialist, Ms. Littlejohn, that Mr. Warren's Grievance History Log does not show he filed a grievance appeal for grievance #94014. Mr. Warren does not dispute this. Instead, he responds that he did not file a grievance appeal because the process was unavailable to him. Specifically, he states in his sworn declaration that he requested a grievance appeal form in the customary manner—that is, he placed it "in the counselor's box in the P-Housing Unit on December 11, 2016." Filing No. 43 at 10. But he attests that he did not receive a grievance appeal form or any other response.[2]

The defendants do not present any evidence disputing that the method described by Mr. Warren is the customary way in which inmates receive grievance appeal forms at Wabash Valley. Thus the Court is left with Mr. Warren's undisputed evidence that he attempted to utilize the customary method for obtaining grievance appeal forms at Wabash Valley, but neither his counselor nor the grievance specialist provided him with a grievance appeal form or otherwise

---

[2] Mr. Warren also submits the declaration of another inmate, Robert Holleman, who among other things attests that he has had grievances lost by IDOC employees. The defendants dispute the admissibility of Mr. Holleman's declaration. But the Court need not discuss this declaration or the defendants' objection thereto because it is ultimately irrelevant to the resolution of this motion.

responded to his request. The Supreme Court recently made clear in *Ross* that such circumstances can render the administrative remedy process unavailable. Specifically, the remedy process is unavailable when it "operates as a simple dead end," *Ross*, 136 S. Ct. at 1859, or "when prison administrators thwart inmates from taking advantage of a grievance process," *id.* at 1860. This is what happened here. Mr. Warren attempted to proceed to the appeal stage of the administrative grievance process but it was a dead end. Despite him following the customary procedures, prison administrators failed to follow up with him.

Earlier Seventh Circuit decision align with *Ross*'s explanation of when administrative remedies are unavailable, and they specifically hold that the denial of forms to complete the grievance process causes it to be unavailable. *See Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) ("If prison employees refuse to provide inmates with those forms when requested, it is difficult to understand how the inmate has any available remedies. Just as prison employees cannot exploit the exhaustion requirement by not responding to grievances, they should not be rewarded for preventing an inmate access to an administrative remedy." (citations omitted)); *see also Thomas*, 787 F.3d at 848 (describing *Dale* as holding that the administrative remedy process "is unavailable when officials refuse to give prisoner the form required to file grievance"); *Kaba*, 458 F.3d at 684 ("[A]s we held in *Dale*, when prison officials fail to provide inmates with the forms necessary to file an administrative grievance, administrative remedies are not 'available.'")

Although the defendants point out that Mr. Warren points to no specific affirmative misconduct on the part of any IDOC employee, the foregoing authorities show that such evidence is not required. *See, e.g.*, *Kaba*, 458 F.3d at 684 ("[W]hen prison officials *fail to provide* inmates with the forms necessary to file an administrative grievance, administrative remedies are not 'available.'" (emphasis added)). This is especially true when, as here, the undisputed evidence

shows that Mr. Warren utilized the customary process for requesting a grievance appeal form and yet he did not receive one.

Moreover, it is the defendants' burden to prove that the administrative remedy process was available. *See Thomas*, 787 F.3d at 848; *Kaba*, 458 F.3d at 686. The only evidence they provide regarding availability is the general statement that, "[a]s an inmate incarcerated with the Indiana DOC, the Offender Grievance Process has been available to [Mr.] Warren." Filing No. 39-1 at 2. When considered alongside Mr. Warren's specific evidence that his attempt to obtain a grievance appeal form in the customary manner was unsuccessful, the defendants' single generalized statement regarding availability is insufficient to even place in dispute Mr. Warren's evidence that he could not obtain a grievance appeal form, let alone for the defendants to carry their burden on this issue.

For these reasons, the defendants' motion for summary judgment must be **denied**. The undisputed evidence shows that the administrative remedy process was unavailable to Mr. Warren. This action will proceed as set forth in Part IV below.

**B.       Warning Defendants' Counsel Regarding Legally Frivolous Arguments**

The undisputed evidence reveals that the defendants are not entitled to summary judgment. Nevertheless, a discussion of the defendants' primary argument in their reply brief is warranted, as it is legally frivolous yet often presented to this Court, especially in prisoner civil rights cases. In their reply brief, the defendants ask the Court to disregard Mr. Warren's sworn declaration. They state that Mr. Warren "simply relies on his own declaration that he put a grievance appeal request in the counselor's mailbox" to contest their motion. Filing No. 44 at 2. Apparently, the defendants believe that the plaintiff cannot rely on his own sworn statement in response to a motion for summary judgment. They continue: "If all an inmate has to do to excuse his failure to complete

the grievance process is submit his own testimony in response to a motion for summary judgment stating he now remembers putting an alleged grievance appeal in a counselor's mailbox and 'they must have lost it,' prison administrators will have difficulty administering an effective grievance process." Filing No. 44 at 3. The defendants, then, do not meaningfully confront the evidence in Mr. Warren's sworn declaration and ask the Court to enter summary judgment in their favor.

The defendants' argument is simply a request for the Court to not consider Mr. Warren's sworn declaration to be competent evidence. Otherwise, there is no basis for them to argue that summary judgment in their favor is appropriate. The defendants' position is problematic for several reasons, but the Court will focus here on the most salient—namely, that this argument has been consistently rejected by the Seventh Circuit such that it is legally frivolous for the defendants to raise it.

The Seventh Circuit has emphasized time and again that so-called "self-serving" sworn testimony is competent evidence at summary judgment that *must* be considered by the Court. *See, e.g.*, *McKinney v. Office of Sheriff of Whitley Cnty.*, 866 F.3d 803, 814 (7th Cir. 2017) ("Our cases for at least the past fifteen years teach that [s]elf-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment." (citation and quotation marks omitted)); *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) ("Deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving. As we have repeatedly emphasized over the past decade, the term 'selfserving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment."). This is true even if the sworn statements are included in declarations, pleadings, or other filings. *See Rowe v. Gibson*, 798 F.3d 622, 627 (7th Cir. 2015) (holding that a pro se prisoner's attestations in his verified complaint and declarations constitute competent evidence at

summary judgment and "must be credited"); *Dale*, 376 F.3d at 655 ("By declaring under penalty of perjury that the [response] was true, . . . [the plaintiff] converted the [response], or rather those factual assertions in the [response] that complied with the requirements for affidavits specified in the rule . . . into an affidavit." (citation and quotation marks omitted)).

The defendants are correct that, if the foregoing is the law, "all an inmate has to do" to oppose summary judgment is submit sworn testimony that his attempts at exhaustion were thwarted. Filing No. 44 at 3. But the Court takes perjury seriously, and the consequences of perjury are a sufficient deterrent to false sworn statements. Moreover, if the law were any different, plaintiffs opposing exhaustion could rarely contest summary judgment, given that the actions they took in order to attempt to exhaust are often only within their personal knowledge.

Less than a month ago the Seventh Circuit again reiterated that sworn self-serving testimony must be considered, and it made clear that in this circuit there is no longer any legal basis for such an argument:

> *Everything* a litigant says in support of a claim is self-serving, whether the statement comes in a complaint, an affidavit, a deposition, or a trial. Yet self-serving statements are not necessarily false; they may be put to the test before being accepted, but they cannot be ignored. Our opinion in *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013), recounts the circuit's flirtation with a doctrine that allows judges to disregard self-serving statements, and it overrules any precedents that so much as hinted in that direction. It is dismaying to see plausible allegations labeled "self-serving" and then swept aside after *Hill* and its predecessors such as *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003).

*Sanders v. Melvin*, --- F.3d ----, 2017 WL 4638653, *2 (7th Cir. 2017); *see Payne*, 337 F.3d at 773 ("We hope th[e foregoing] discussion lays to rest the misconception that evidence presented in a 'self-serving' affidavit is never sufficient to thwart a summary judgment motion.").

The Seventh Circuit is clearly "dismay[ed]" at how often it has to address this issue. *Id.*; *see Whitaker v. Wisconsin Dept. of Health Servs.*, 849 F.3d 681, 685 (7th Cir. 2017) (stating that

the Seventh Circuit has "taken pains to reject" any "misconception" on this point); *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010) ("[W]e long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is 'self-serving.'"). The Seventh Circuit's frustration is undoubtedly directed in large part toward district courts that have continued to discount admissible evidence because it is self-serving, despite the Seventh Circuit's repeated reminders that doing so constitutes legal error. But, as the Seventh Circuit has recognized, district courts continue to make this error at least in part because parties continually invite them to do so. *See, e.g.*, *Navejar v. Iyiola*, 718 F.3d 692, 697 (7th Cir. 2013) ("[T]he [district] court adopted the erroneous legal argument raised by the defendants in moving for summary judgment that [the plaintiff] could not rely on 'self-serving evidence' to create a material factual dispute.").

When district courts commit this error, often the result is that they are reversed. But counsel has a professional obligation—under Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Indiana Rules of Professional Conduct—to not invite the error in the first place. Rule 11(b) provides that when an attorney presents a filing to the Court, she or he certifies "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . (2) The . . . legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law . . . ." Rule 11(c) authorizes the Court to sanction attorneys who violate this rule. Section 1927 also authorizes the Court to sanction an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously." Such sanctions are appropriate "where a claim [is] without a plausible legal or factual basis and lacking in justification." *Lightspeed Media Corp. v. Smith*, 761 F.3d 669, 708 (7th Cir. 2014) (citation and quotation marks omitted). Finally, the Indiana Rules of Professional

Conduct, Rule 3.3(a), states that "[a] lawyer shall not knowingly . . . (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel . . . ."

The defendants' request that this Court enter summary judgment in their favor by discounting Mr. Warren's plainly admissible evidence that created a material dispute of fact clearly runs afoul of well-established circuit precedent. After the Seventh Circuit's decision in *Hill* that "overrule[d] any precedents that so much as hinted" that evidence could be discounted simply because it was self-serving, *Sanders*, --- F.3d ----, 2017 WL 4638653, at \*2, there is no reasonable basis to ask this Court to do so. This is especially true given that the Seventh Circuit remains steadfast in rejecting this basis for discounting evidence, and within the past month expressed that it was "dismay[ed]" that this continues to occur. *Id.*

Yet, instead of directly confronting the fact that Mr. Warren's declaration amounted to evidence that the administrative remedy process was not available to him, and then presenting contrary evidence or withdrawing their motion for summary judgment, the defendants filed a reply brief asking the Court to commit legal error. And they did so without even acknowledging the mountain of legal authority indisputably foreclosing this. This runs afoul of both Rule 11, *see Borowski v. Depuy, Inc.*, 850 F.2d 297, 304-05 (7th Cir. 1988) ("[Counsel's] ostrich-like tactic of pretending that potentially dispositive authority against [his] contention does not exist[] [is] precisely the type of behavior that would justify imposing Rule 11 sanctions."), and § 1927, *see Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d 609, 614 (7th Cir. 2006) (holding that "reckless indifference to the law" constitutes objective bad faith and can thus warrant § 1927 sanctions; "[i]f a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate

inquiry, to be unsound, the conduct is objectively unreasonable and vexatious" (citations and quotation marks omitted)).

The defendants' approach is part of a troubling pattern the Court has noticed in prisoner civil rights cases where the affirmative defense of exhaustion is raised: the defendants move for summary judgment, they ignore the plaintiff's admissible sworn testimony in response that the administrative remedy process was not available to him, and without confronting this evidence in their reply, the defendants ask the Court to also ignore the evidence and enter summary judgment in their favor. Such an approach leads to only two possibilities: the Court either has to explain, again, that the defendants' argument lacks any basis in the law or, worse still, the Court—in its efforts to resolve one of the several hundreds of prisoner civil rights cases pending before it at any one time—mistakenly accepts the defendants' invitation to commit legal error. Of course, neither of these options forced upon the Court by defendants in these cases is acceptable. It is not only unethical for defendants to take this approach to exhaustion for all the reasons set forth above, but it also wastes the parties' and the Court's limited resources to brief and then rule on what amount to frivolous motions for summary judgment on exhaustion.

Despite the foregoing, the Court does not intend to impose sanctions at this time. Instead, this discussion is meant to warn the defendants' counsel and attorneys generally that raising the argument the defendants raised here could subject to them to sanctions. Counsel must take their obligations under Rule 11, § 1927, and the Indiana Rules of Professional Conduct just as seriously when litigating against a pro se prisoner as they do in other litigation.

In conclusion, the pattern outlined above and taken by the defendants in this case cannot continue. When confronted with evidence that the administrative remedy process was unavailable, defendants must pursue only legitimate courses—*e.g.*, attempt to dispute that evidence, submit

evidence showing that the administrative remedy process was nevertheless available, concede that a *Pavey* hearing is required, or withdraw their affirmative defense of exhaustion. Whatever path they choose, asking this Court to commit legal error by ignoring the plaintiff's perfectly admissible material evidence is not an option. Should this continue, sanctions under Rule 11 and 28 U.S.C. § 1927 will be warranted.

## IV.
## Rule 56(f) Notice and Further Proceedings

The current record before the Court shows that Mr. Warren is entitled to summary judgment on the defendants' affirmative defense of exhaustion because the undisputed evidence shows that the administrative remedy process was unavailable to Mr. Warren. Therefore, pursuant to Rule 56(f)(1), the Court gives the defendants notice of its intent to grant summary judgment in Mr. Warren's favor on this issue. The defendants have **through November 29, 2017**, in which to respond to the Court's notice. Alternatively, they may withdraw their affirmative defense by this date.

**IT IS SO ORDERED.**

Date: 11/13/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

MARC T. WARREN
866393
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate
Mail/Parcels
Electronic Service Participant – Court Only

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Jennifer Elizabeth Lemmon
INDIANA ATTORNEY GENERAL
jennifer.lemmon@atg.in.gov